UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID B. SULLIVAN and DONNA L. BECK, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.  3:14-cv-14074-MGM |
| THE BANK OF NEW YORK MELLON CORPORATION FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE SASCO 2005-16 TRUST FUND, and NATIONSTAR MORTGAGE, LLC | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## I.        INTRODUCTION

While residential foreclosure is an unfortunate event, a mortgage lender can only provide so much leniency to borrowers who themselves admit that they purchased more home than they could ultimately afford.  Plaintiffs David B. Sullivan ("Sullivan") and Donna L. Beck ("Beck") (collectively, "Plaintiffs") purchased the property located at 92 Lakeshore Drive, Monson, Massachusetts (the "Property") on June 28, 2005.  In doing so, they entered into a first Mortgage dated June 30, 2005, and recorded on that date with the Hampden County Registry of Deeds in Book 15135, Page 528.  As Plaintiffs admit in their Verified Complaint, Application for a Temporary Restraining Order and Preliminary Injunction, and Request for Jury Trial ("Complaint"), at ¶¶ 16-18, they acquired this Property with the financing that they did on a belief that Mr. Sullivan was going to receive an increase in salary.  That increase never came.

As Plaintiffs likewise admit, they have been unable to make their mortgage payments for the past five years now.  In fact, Plaintiffs actually entered into a final loan modification with the prior mortgage servicer, Aurora Loan Services LLC ("Aurora") in February 2012, which lowered

their monthly interest rate.  The Plaintiffs still failed to make payments.  Eventually, the investor,

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the SASCO 2005-16

Trust Fund ("BONY, as Trustee"),[1] acting through the current servicer, Nationstar Mortgage

LLC ("Nationstar") (collectively, "Defendants"), took steps to foreclose.  Plaintiffs challenge

that process, but they largely do so based upon stock theories that by now the Courts, most

importantly the First Circuit, have generally rejected.  Plaintiffs' desire for yet another

modification might be what they seek, but it is not what the law requires.  It is basic that a

mortgage on property serves as the security for entering into a mortgage loan, and there simply

must come a time at which that interest can be foreclosed upon.  That time is now, the Plaintiffs

must move on, and Defendants request that Plaintiffs' Complaint be dismissed in full and with

prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state any plausible claims.

## II.   PROCEDURAL POSTURE

On or about October 14, 2014, Plaintiffs filed their Complaint with the Hampden County

Superior Court.  By agreement of counsel, Defendants accepted service on October 15, 2014.

On November 4, 2014, Defendants filed a Notice of Removal to remove this action to the United

States District Court for the District of Massachusetts.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual material . . .

to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).  "Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between

---

[1] Defendant BONY, as Trustee, is misnamed in the caption as The Bank of New York Mellon <u>Corporation</u> . . . , which is the parent company of BONY, as Trustee.

possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557)

(internal quotation omitted). "In conducting this review, [a court] disregard[s] 'statements in the

complaint that merely offer legal conclusions couched as fact or threadbare recitals of the

elements of a cause of action.'" *Lemelson v. U.S. Bank N.A.*, 721 F.3d 18, 21 (1st Cir. 2013)

(citations, internal quotation marks and bracketing omitted). "Dismissal for failure to state a

claim is appropriate 'if the complaint does not set forth factual allegations . . . respecting each

material element necessary to sustain recovery under some actionable legal theory.'" *Id.* (citing

*U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011)).

"The plaintiff's factual allegations are ordinarily assumed to be true in passing on the

adequacy of the complaint . . . , [b]ut 'ordinarily' does not mean 'always': some allegations,

while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that

they fail to cross 'the line between the conclusory and the factual.'" *Peñalbert-Rosa v. Fortuño-*

*Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (Boudin, J.). Even when a plaintiff makes what is

"patently a *factual* claim," for the purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), it

is still "inadequate absent more specific factual assertions" when it simply constitutes a "bare

allegation" of fact. *Id.* (emphasis in original) (citing *Iqbal*, 556 U.S. at 681). Simple "bald

assertions" will not suffice. *Id.* (quotation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), a court may consider "documents

central to plaintiffs' claim [and] documents sufficiently referred to in the complaint." *Watterson*

*v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). A court may "also take into account . . . matters of

public record, and other matters susceptible to judicial notice." *Wilson v. HSBC Mortg. Servs.,*

*Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (citations omitted). Likewise, when "a complaint's factual

allegations are expressly linked to . . . a document (the authenticity of which is not challenged),

that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998). "When such documents contradict an allegation in the complaint, the document trumps the allegation." *Lowenstern v. Residential Credit Solutions*, Civ. No. 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) (citing *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).[2]

### B.    PLAINTIFFS' FAILURE TO PLEAD A PLAUSIBLE BASIS FOR RELIEF ON ALL OF THEIR CLAIMS

#### 1.    Breach of Contract

The Plaintiffs fail to state a plausible claim on Count I,[3] for Breach of Contract, because they plead no facts to suggest either that what they purport as a breach was in any way a material derogation from the contract, or that this could have in any way caused Plaintiffs any harm. "In Massachusetts, a breach of contract is proven by a showing that (1) an agreement was made between the plaintiff and the defendant supported by valid consideration, (2) the plaintiff was ready, willing and able to perform, (3) the defendant failed to perform a ***material*** obligation under the agreement and (4) the plaintiff suffered damage ***as a result of defendant's failure to perform***." *Coady Corp. v. Toyota Motor Distribs.*, 346 F.Supp.2d 225, 248 (D. Mass. 2003) (emphasis added) (citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961)).

The Plaintiffs' theory as to why Defendants supposedly breached their Mortgage contract boils down to a minor discrepancy in the phrasing of a notice that the Mortgage required to be sent to them prior to initiation of the foreclosure sale process. Paragraph 22 of the Mortgage states, in relevant part, that prior to acceleration of the mortgage loan upon default, the Plaintiffs shall be sent a notice, which "shall further inform [Plaintiffs] of the right to reinstate after

---

[2] *See also Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 232-33 (1st Cir. 2013) (same) (citation omitted).
[3] Defendants will refer to Plaintiffs' 'Causes of Action' as Counts and identify them by Roman numeral in order.

acceleration and the right to bring a court action to assert the non-existence of a default or any

other defense of [Plaintiffs] to acceleration and sale." *See* Compl. ¶ 11.  The sole basis for

Plaintiffs' claim is that the operative notice that they received, dated August 21, 2013, stated:

"You are hereby informed that you have the right to 'cure' or reinstate the loan after acceleration

and the right to assert in the foreclosure proceeding the non-existence of a default or any other

defense you may have to acceleration and sale." *See id.* ¶ 27(a).  The asserted difference in

wording between a right to assert defenses in a "court action" as opposed to "foreclosure

proceeding" serves as the basis for Plaintiffs' Count I.  *See id.* ¶ 51.

Any such argument fails for two reasons.  First, by the plain language at issue, the

supposed discrepancy in wording is immaterial.  The very first definition of the word

"proceeding" listed on Merriam-Webster's online dictionary is:  "*law*:  the process of appearing

before a court of law so a decision can be made about an argument or claim : a legal action."

*Definition of Proceeding*, MERRIAM-WEBSTER ONLINE, http://www.merriam-

webster.com/dictionary/proceeding (last visited Nov. 11, 2014);  *see, e.g.*, *Fed. Ins. Co. v.

Raytheon Co.*, 426 F.3d 491, 498-99 (1st Cir. 2005) ("In construing contracts courts often look to

dictionaries for assistance in determining ordinary meaning.") (citing *Norfolk S. Ry. v. James N.

Kirby*, 543 U.S. 14, 31 (2004) (O'Connor, J.) (looking to Webster's Dictionary to interpret the

"plain language" of a contractual clause)).  If the ordinary meaning of "proceeding" is "legal

action" "before a court of law," the distinction between being notified that one can assert a

defense in one as opposed to the other should not constitute a breach of the Mortgage.

Second, on the facts of this case as pled, Plaintiffs cannot allege that such a supposed

breach would have ***caused*** them any harm.  *See Guckenberger v. Boston Univ.*, 957 F.Supp. 306,

316 (D. Mass. 1997) (breach of contract action requires "that the breach caused the plaintiff

damage") (citations omitted).  If the supposed breach of the Mortgage is that Plaintiffs were not adequately notified of a right to bring a court action to challenge a potential foreclosure sale, but Plaintiffs are raising this claim *in the very court action that they have brought to challenge that potential foreclosure sale*, they cannot claim lack of notice.  Plaintiffs cannot assert that such a purported breach of the Mortgage caused them any harm when they have by definition exercised their very "right to bring a court action to assert . . . defense[s] . . . to acceleration and sale."  *See Cades v. Bank of N.Y. Mellon*, Civ. No. 13-12216-RGS, 2013 WL 6212592, at *3 (D.Mass. Nov. 29, 2013) ("The best evidence that the substitution is immaterial and that the language of the [Acceleration] Notice served its purpose is the fact that [Plaintiff] has challenged the foreclosure by bringing this lawsuit.").[4]  Defendants did not breach the Mortgage, Plaintiffs were not caused any harm, and Count I fails to state a plausible claim.

2.    Violation of M.G.L. c. 244, § 21 [misnumbered]

Similarly, Plaintiffs also fail to state a plausible claim on Count II, asserting a Violation of M.G.L. c. 183, § 21,[5] because the inconsequential discrepancy in the acceleration notice language, as already discussed *supra*, cannot constitute a violation of the statutory power of sale. Plaintiffs make a conclusory allegation in their Complaint, at ¶ 55, that Defendants have not complied "with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, as required under M.G.L. c. 183, § 21." Defendants assume that Plaintiffs' basis for this claim is (like Count I) based upon the purported violation of the terms of Paragraph 22 of the Mortgage, since Plaintiffs do not allege violations of any statute within the statutory power of sale.  The only statutes that Plaintiffs contend to have been violated beyond G.L. c. 183, § 21 itself are G.L. c. 244, §§ 35A and 35B.  *See* Compl. ¶¶

---

[4] The *Cades* case will be discussed further, *infra*, in connection with Plaintiffs' related Count II.
[5] The actual header to Count II in the Complaint states Chapter **244**, not Chapter **183**, but Defendants presume that this is a typographical error, because G.L. c. 244, § 21 does not pertain to any of the allegations in the Complaint.

57-63.  These statutes are not part of the statutory power of sale.  *See U.S. Bank N.A. v. Schumacher*, 467 Mass. 421, 428-31 (2014).[6]  Accordingly, Defendants presume that this challenge is based upon "the terms of the mortgage," *see* Compl. ¶ 56, and that this claim asserts that the particular wording in the acceleration notice as discussed in connection with Count I now constitutes a supposed violation of the statutory power of sale.

Two decisions are instructive on this point.  In *Cades*, the Court dismissed on a Rule 12(b)(6) motion a similar challenge based ultimately upon a minor deviation in the language of the notice as required by Paragraph 22 of the mortgage at issue, as compared to the language in the acceleration notice that was ultimately sent.  2013 WL 6212592 at *2-3.  As the Court stressed, "strict compliance does not necessarily mean punctilious compliance, if with minor deviations from language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."  *Id.* (quoting *Santos-Rodriguez v. DoralMortg. Corp.*, 485 F.3d 12, 17 (1st Cir. 2007)).[7]  "The general rule is that language in a notice to cure alerting a borrower to the right to assert a legal defense is sufficient despite the absence of a specific reference to a lawsuit or a court of law."  *Id.* (citation omitted).  Again, it is difficult for the Plaintiffs to argue they have not received sufficient notice to bring a legal challenge to a potential foreclosure when they are asserting such a challenge in this very action.  *See id.*  Any challenge to the foreclosure that Plaintiffs accordingly raise based upon this notice language would be wholly circular, even if the standard were strict compliance.[8]

---

[6] While the *Schumacher* decision only explicitly addressed Section 35A, the reasoning of the decision would inescapably apply to Section 35B as well.  The rationale of the Court was that under Section 35A, "[a] homeowner's right to cure a default is a preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings in the first instance . . . ."  *Schumacher*, 467 Mass. at 431.  The precise rationale would likewise apply to Section 35B, which provides the potential for alternatives to foreclosure (such as a modification) for certain mortgage loans, again prior to and in lieu of foreclosure proceedings themselves.

[7] *See also Citibank, N.A. v. Gonick*, No. 13-P-1560, 2014 WL 5470796, at *1 (Mass.App.Ct. Oct. 30, 2014) (same).

[8] Any summary process cases in the Housing or District Court Departments of the Massachusetts Trial Court to which Plaintiffs might cite are readily distinguishable, because these eviction actions by definition come after

But as the Court held in *Pinti v. Emigrant Mortg. Co.*, the standard applicable to such a challenge should *not* be strict compliance, because this language in Paragraph 22 is not part of the statutory power of sale.  No. MICV2013-00348, 2013 WL 6797183, at *6-8 (Mass.Super.Ct. Oct. 31, 2013), *appeal pending*, SJC-11742.

> The notice of default and right to cure is made prior to acceleration of the debt and prior to invocation and exercise of the statutory power of sale.  Mortgage terms related to the content of such notice of default, therefore, do not relate to exercise of the power of sale and are not terms of the power.

*Id.* at *7.  Subsequent to the Trial Court decision in *Pinti*, the Supreme Judicial Court in fact expressly held in *Schumacher* that G.L. 244, § 35A was not a part of the statutory power of sale *precisely* because a right to cure notice was "a preforeclosure undertaking."  467 Mass. at 431. While Defendants recognize that *Pinti* is in fact presently on appeal before the Supreme Judicial Court, it would appear unavoidable that Justice Hogan's well-reasoned Trial Court decision will be affirmed in light of the SJC's subsequent reasoning in *Schumacher*.  Count II fails to state a plausible claim as well and should likewise be dismissed.

### 3.   Violation of M.G.L. c. 244, § 35A

Plaintiffs' Count III alleges that "Defendants have failed to provide the Plaintiffs with a notice which complies with the explicit requirements of M.G.L. c. 244, § 35A."  *See* Compl. ¶ 58.  While Plaintiffs do not specify in their Complaint just what the defect in the Section 35A notice was, Defendants understand from Plaintiffs' preliminary injunction briefing, at 23, that they contend the operative notice misidentified the contemporary mortgagee.  Such a claim fails as a matter of law in the wake of *Schumacher*, which expressly recognized that this statute was not part of the statutory power of sale, such that strict compliance was not required.

---

foreclosure has already taken place, without having been challenged by the borrowers.  This, by contrast, is a ***pre-foreclosure*** challenge, because foreclosure has not taken place.  *See, e.g.*, Compl. ¶ 1 and Prayers for Relief.

The Court in *Schumacher* held "that G.L. c. 244, § 35A, is not one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale,' G.L. c. 183, § 21," and thus strict compliance with that statute was unnecessary.  467 Mass. at 431;  *see Haskins v. Deutsche Bank Nat. Trust Co.*, --- N.E.3d ---, 13-P-506, 2014 WL 5800489, at *2 (Mass.App.Ct. Nov. 10, 2014) ("As the Supreme Judicial Court made clear in *Schumacher* . . . the rule of strict adherence observed in *Ibanez* and invoked by the plaintiff is inapposite.");  *Rubin v. Deutsche Bank Nat. Trust Co.*, 13-P-1347, 2014 WL 2532280, at *1 (Mass.App.Ct. June 6, 2014) (Rule 1:28 Decision) ("minor deficiency in [a] notice to cure [does] not void [a] foreclosure").  Instead, after *Schumacher*, a borrower may not simply assert a violation of Section 35A, but must further plead facts showing how this specific alleged violation prevented him from curing his arrearage.  A "deficiency in the notice [must be] substantial," and is immaterial when "[t]he notice provided the plaintiff with the information needed to cure or challenge the default."  *See Rubin*, 2014 WL 2532280 at *1 n.4.  "[T]o have a successful claim for any defect in the notice, the plaintiffs would have to plead and prove some actual prejudice ***from the defect***."  *Coelho v. Asset Acquisition & Resolution Entity, LLC*, Civ. No. 13-10166-GAO, 2014 WL 1281513, at *3 (D.Mass. Mar. 31, 2014) (emphasis added).  A plaintiff who "do[es] not claim actual prejudice from any of the claimed deficiencies" states no claim as a matter of law.  *Id.* at *2.

Without any allegation that any supposed defect with the Section 35A notice ***itself*** prevented Plaintiffs from cure, any allegations of technical deficiencies would be irrelevant.  A copy of the notice is attached in Exhibit 9 to the Affidavit of David B. Sullivan, dated October 3, 2014 ("Sullivan Affidavit").  In any event, there simply was no defect.  While Plaintiffs contend that the name of the mortgagee provided was incorrect at the time, 209 C.M.R. § 56.02 (2012), the implementing regulation by the Division of Banks, *see* G.L. c. 244, § 35A(h), defines

"Mortgagee" as "the mortgage creditor or lender . . . ."  The listed party was BONY, as Trustee, the investor, the assignee of the originating lender.  The Appeals Court in *Haskins*, a reported decision, has just cited to these regulations in rejecting a challenge based on the identity of the "mortgagee" under Section 35A.  2014 WL 5800489 at *5.[9]  As the *Haskins* Court recognized, "nothing in the statutory objective appears to be furthered by furnishing the mortgagor with the name and address of the mortgagee in circumstances where the loan is serviced by a different entity" when "all relevant information concerning the loan and all communications with the mortgagor will be with the servicer . . . and not the holder of either the legal interest in the mortgage . . . or the beneficial interest in the loan (here, the securitization trust)." *Id.*  What Plaintiffs do not and cannot contest is that the notice expressly provided mailing and telephone contact information for Nationstar, the servicer.  Nothing prevented Plaintiffs from contacting Nationstar to respond to this notice if they actually had the funds and inclination to do so.

### 4.   Violation of M.G.L. c. 244, § 35B

Plaintiffs also fail to state a plausible claim in Count IV of the Complaint, which alleges, at ¶ 62, that the "Defendants have failed to take reasonable steps and make a good faith effort to avoid foreclosure, as required under M.G.L. c. 244, § 35B."  The basis for this conclusion is that Plaintiffs purport that after they had supposedly submitted a complete modification application package on August 25, 2013, "the Plaintiffs did not receive any further communication from Nationstar regarding their eligibility for a loan modification." *See id.* ¶¶ 28-29.

While this is categorically untrue,[10] the more salient point for the purposes of a Rule 12(b)(6) motion is that G.L. c. 244, § 35B did not even apply to the Plaintiffs in these

---

[9] *See Larivaux v. Bank of Am., N.A.*, Civ. No. 12-11172-FDS, 2013 WL 6146069, at *4-5 (D.Mass. Nov. 20, 2013).

[10] On both August 26 and 28, 2013, Nationstar responded by letter to Sullivan, to note it had received the August 25, 2013 correspondence and was reviewing the documentation as provided.  On August 29, 2013, just four days after the application, Nationstar sent Sullivan a further letter, stating that the August 25th materials were missing certain

circumstances.  As Plaintiffs note in their Complaint, at ¶ 61, the obligations set forth in G.L. c.

244, § 35B(b) only apply to "certain mortgage loans," and the Note attached as Exhibit 1 to the

Affidavit of David B. Sullivan dated June 30, 2005, which began with interest-only payments,

*see* G.L. c. 244, § 35B(a), fit the criteria.  But the Plaintiffs conceal that the Defendants were not

in fact seeking to foreclose on the basis of *this* Note, which had actually been supplanted by a

modification that Plaintiffs had already received.  As Plaintiffs state in their Complaint, at ¶ 19,

while their mortgage loan was being serviced by Aurora, Plaintiffs applied for a modification

with Aurora.  Plaintiffs admit that they "received offers of modifications from Aurora," *see id.* ¶

23, and any such offers are thus "sufficiently referred to in the complaint" that they can be

considered on a motion to dismiss.  *See Watterson*, 987 F.2d at 3.  The Plaintiffs in fact **accepted**

one of these offers from Aurora, with both parties executing a notarized Loan Modification

Agreement in February 2012, a true and accurate copy of which is attached as **Exhibit "A."**[11]

The reasons why Defendants did not violate Section 35B are therefore twofold.  First, the

requirements of G.L. c. 244, § 35B(b) on their plain language only apply to "publication of

notice of a foreclosure sale . . . upon certain mortgage loans," but Defendants were not seeking to

foreclose based on the original Note.  The terms had been amended.  Second, G.L. c. 244, §

35B(c) is explicit that "[t]he right to a modified mortgage loan, as described in this section, shall

be granted once during any 3-year period, regardless of the mortgage holder."[12]  "Modified

mortgage loan" is defined in sub-section (a) as "a mortgage loan modified from its original

terms."  In short, Plaintiffs **did** receive a modified mortgage loan in February 2012.  They cannot

---

documentation of income, *inter alia*, the most recent documentation of Beck's income.  Plaintiffs never provided
supplemental documentation in response.  Plaintiffs then requested a potential deed in lieu of foreclosure, and by
letter dated January 14, 2014, Nationstar informed Plaintiffs that they did not meet the program guidelines.
[11] This Modification lowered the Plaintiffs' interest rate from 5.750% to 4.625% and was no longer interest-only.
[12] The implementing regulation, 209 C.M.R. § 56.05(2) (2012), likewise states that "[t]he right to request a mortgage
loan modification shall be granted to a borrower once during any three year period, regardless of mortgage holder."

complain under this statute that they did not receive another, later the following year.  Even as of the date of this brief, three years have not yet elapsed.  Count IV should be dismissed as well.

### 5.   Wrongful Foreclosure

Count V of the Complaint, alleging Wrongful Foreclosure, rests upon an allegation that the foreclosure as noticed was improper because the assignment of the Mortgage to BONY, as Trustee, was supposedly invalid under the terms of the underlying securitized trust documents.[13] *See* Compl. ¶¶ 34-48, 64-67.  Putting aside that this is in fact a misreading of this agreement,[14] the threshold point is that the Courts have recognized that Plaintiffs as non-parties to such pooling and servicing agreements (or PSAs) have no prudential standing to challenge them.

The First Circuit has made plain that "claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing."  *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013) (citing *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013)).  This is because "[u]nder Massachusetts law, it is clear that claims alleging disregard of a

---

[13] Plaintiffs include a selection of numerous pages from the Trust Agreement, dated August 1, 2005, governing the securitized trust at issue, as Exhibit 1 to the Affidavit of Hugh Heisler, dated October 10, 2014.  For clarity and comprehensiveness, Defendants are attaching a full copy of that agreement as **Exhibit "B."**  As Plaintiffs state, this is publicly-available at https://www.sec.gov/Archives/edgar/data/1337816/000116231805000765/exhibit41.htm .

[14] *See Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 91 (2d Cir. 2014) ("The fact that plaintiffs mount no viable challenge to the timeliness of the assignment of the ***promissory notes*** scuttles their contention that the mortgages were not timely assigned.") (emphasis added).  Plaintiffs wholly ignore that this was a MERS mortgage, with MERS as mortgagee, which stated on its very first page that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," and on the second page, under "TRANSFER OF RIGHTS IN THE PROPERTY," that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, [the property]."  *See Culhane*, 708 F.3d at 286-87, 291-93 (describing operation of MERS mortgages).  The Definitions Section 1.01 of the Trust Agreement defines "MERS Mortgage Loan" as "Any Mortgage Loan as to which the related Mortgage . . . has been or will be recorded in the name of MERS, as agent for the holder from time to time of the Mortgage Note."  In short, putting aside Plaintiffs' lack of standing to raise such challenges, prior to the Closing Date of the Trust, for purposes of the Trust Agreement, MERS had record title to the Mortgage as agent for the requisite parties.  "[W]here a mortgage and note are separated, 'the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage . . . .'"  *Eaton v. FNMA*, 462 Mass. 569, 576 (2012) (quoting *U.S. Bank N.A. v. Ibanez*, 458 Mass. 637, 649 (2011)).

trust's PSA are considered voidable, not void." *Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 37 (1st Cir. 2014) (citations omitted).

In the face of this clear and repeated authority, Defendants understand Plaintiffs' rejoinder to be that the assignment of the Mortgage at issue was void, not voidable, under New York trust law. *See* Compl. ¶ 46. From Plaintiffs' preliminary injunction briefing, they rely largely upon a New York state trial court decision, *Wells Fargo Bank, N.A. v. Erobobo*, No. 31648/2009, 2013 WL 1831799, at *8-9 (N.Y.Sup.Ct. Apr. 29, 2013), which cited to N.Y. Est. Powers & Trusts Law § 7-2.4, for the proposition that an "act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

The vast majority of Courts to have evaluated the "*Erobobo*" rule, however, have squarely rejected it. Notably, the First Circuit in *Butler* weighed in on this question as well. The Court in *Butler* was confronted with a challenge just as here, but deemed it waived as not asserted before the trial court. 748 F.3d at 34-37. Notwithstanding, the Court expressly took the opportunity to "note without decision, however, that the vast majority of courts to consider the issue have rejected *Erobobo's* reasoning, determining that despite the express terms of N.Y. Est. Powers & Trusts Law § 7-2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable." *Id.* at 37 n.8 (collecting cases). Every decision of the U.S. District Court for the District of Massachusetts on the topic has concurred.[15] Critically, the Second Circuit, which of course oversees New York actions in diversity, has likewise rejected *Erobobo* in a seminal recent decision in *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 86-92 (2d Cir. 2014).[16]

---

[15] *See Cades v. Bank of N.Y. Mellon*, Civ. No. 13-12216-RGS, 2013 WL 6212592, at *4 n.7 (D.Mass. Nov. 29, 2013); *Halacy v. Wells Fargo Bank, N.A.*, Civ. No. 12-11447-TSH, 2013 WL 6152351, at *3 (D.Mass. Nov. 21, 2013); *Orellana v. Deutsche Bank Nat. Trust Co.*, Civ. No. 12-11982-NMG, 2013 WL 5348596, at *5 n.13 (D.Mass. Aug. 13, 2013); *Koufos v. U.S. Bank, N.A.*, 939 F.Supp.2d 40, 57 n.2 (D. Mass. 2013).
[16] Indeed, the Second Circuit noted that a recent decision of the Appellate Division of the New York Supreme Court categorically held that borrowers "did not have standing to assert noncompliance with the subject lender's pooling

In response, Defendants understand Plaintiffs' argument (again from the preliminary injunction briefing) to rest on supposed practical difficulties inherent to ratification by certificate-holders to a securitized trust.  But this ignores that "the case law is clear that 'trust beneficiaries need not *actually* ratify the act to render an act voidable and therefore outside the scope of EPTL § 7-2.4;  rather, the fact that trust beneficiaries *could* ratify such an act is sufficient to render it voidable." *Berezovskaya v. Deutsche Bank Nat. Trust Co.*, No. 12 CV 6055(KAM), 2014 WL 4471560, at *7 (E.D.N.Y. Aug. 1, 2014), *adopted*, 2014 WL 4470786 (Sept. 10, 2014) (emphasis in original) (quoting *Tran v. Bank of N.Y.*, No. 13 Civ. 580(RPP), 2014 WL 1225575, at *5 (S.D.N.Y. Mar. 24, 2014)).  Moreover, this position would ask a court to entertain the preposterous fiction that the certificate-holders of BONY, as Trustee, a party to this action defending the validity of the assignment in question, in fact would not approve of it. *See Yuille v. Am. Home Mortg. Servs., Inc.*, 483 Fed.Appx. 132, 135 (6th Cir. 2012).

As Judge Josephson held in a recent decision of the Hampden County Superior Court, "[r]atification is a longstanding practice in agency law generally . . . and foreclosure law specifically." *Coffey v. Advanced Fin. Servs.*, SUCV2012-00525, Memorandum of Decision on the Defendants' Motions for Summary Judgment, at 10 (Mass.Super.Ct. July 1, 2014) (citing *Barnes v. Boardman*, 149 Mass. 106, 115-16 (1889) (mortgagee may ratify agent's reentry after the fact); *Fisher v. Willard*, 13 Mass. 379, 380 (1816) (ratification generally)).[17]  As the SJC has said directly, "[t]here is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sales." *Eaton v. FNMA*, 462 Mass. 569, 586 (2012).  Plaintiffs lack standing to challenge the assignment of their Mortgage based upon the terms of the PSA, and this claim fails as well.

---

service agreement," citing the very opinion upheld in *Rajamin*. *Id.* at 86-87 (quoting *Bank of N.Y. Mellon v. Gales*, 116 A.D.3d 723, 725, 982 N.Y.S.2d 911, 912 (2d Dep't 2014)).  This calls *Erobobo* into question further still.

[17] This decision is unavailable electronically, and so Defendants are attaching a copy hereto as **Exhibit "C."**

6.      Breach of Implied Covenant of Good Faith and Fair Dealing

The Plaintiffs' Count VI, alleging Breach of Implied Covenant of Good Faith and Fair

Dealing, is pled in vague and conclusory fashion, but it is plain that the First Circuit decisively

rejected any such theory in *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 492-93 (1st Cir.

2013).  In *MacKenzie*, the Court upheld a Rule 12(b)(6) dismissal of a claim for breach of the

implied covenant of good faith and fair dealing brought by mortgage borrowers who claimed the

mortgage servicer improperly denied them a loan modification.  *See id.* at 489-93.  As the Court

noted, the "Plaintiffs' argument . . . appear[ed] to conflate the implied covenant of good faith and

fair dealing, which attaches to every contract, with the particular duty of a mortgagee to act in

good faith and use reasonable diligence in exercising its power of sale.  The two doctrines are

distinct and have separate underpinnings."  *Id.* at 493 n.4 (citations omitted).  The Court in any

event analyzed both doctrines, and demonstrated why neither could give rise to a plausible claim.

As for a claim asserted under the implied covenant of good faith and fair dealing as

properly labeled, "[t]he concept of good faith 'is shaped by the nature of the contractual

relationship from which the implied covenant derives,' and the 'scope of the covenant is only as

broad as the contract that governs the particular relationship.'"  *Id.* at 493 (quoting *Young v.*

*Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013)).  The "Mortgage [was] the only

contract between the [borrowers] and [lender]."  *Id.*  But as the First Circuit recognized, "nothing

in the mortgage impose[d] a duty on [the servicer] to consider a loan modification prior to

foreclosure in the event of a default."  *Id.*  (citing *Peterson v. GMAC Mortg., LLC*, No. 11-

11115, 2011 WL 5075613, at *6 (D.Mass. Oct. 25, 2011) (citing *Carney v. Shawmut Bank, N.A.*,

No. 07-P-858, 2008 WL 4266248, at *3 (Mass.App.Ct. Sept. 19, 2008))).  The line of cases

holding that a lender has no duty to modify a loan is voluminous.[18]  "Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults."  *Id.*  Indeed, "[w]hen the borrower is in default, that necessarily alters the contours of the covenant of good faith and fair dealing."  *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 101 (1st Cir. 2009).  Since "the implied covenant of good faith 'cannot create rights and duties not otherwise provided for in the existing contractual relationship,'" "[i]t would therefore be an error to extend the implied covenant to encompass a duty to modify (or consider modifying) the loan prior to foreclosure, where no such obligation exists in the mortgage."  *MacKenzie*, 738 F.3d at 493 (quotations omitted).[19]

The *MacKenzie* Court likewise rejected such a claim if it was instead brought on the basis "of a duty of good faith . . . tied directly to the mortgagee's contractual right to exercise a power of sale."  *Id.* at 493 & n.4.  This is because "a mortgagee's duty of good faith when acting under a 'power of sale' generally only extends to 'reasonable efforts to sell the property for the highest value possible.'"  *Id.* at 491, 493 (citing, *e.g.*, *Armand v. Homecomings Fin. Network*, No. 12-10457, 2012 WL 2244859, at *5 (D.Mass. June 15, 2012)).  A "mortgagee's general obligations of good faith" is a term of art under the case law, which in truth ***only*** exists to ensure an adequate price at a foreclosure sale.  *See Fitzgerald v. First Nat. Bank of Boston*, 46 Mass.App.Ct. 98, 100-01 (1999).[20]  The case law recognizes an "overriding principle that, beyond the statutorily-prescribed procedures, the mortgagee's duties 'are embraced under the general obligation to make reasonable efforts to prevent a sacrifice of the property.'"  *Id.* at 100 (citations omitted);

---

[18] *See, e.g., Bostwick v. Sovereign Bank*, No. 13-P-296, 2014 WL 683741, at *1 (Mass.App.Ct. Feb. 24, 2014); *Adamson v. MERS, Inc.*, SUCV2011-00693H, 2011 WL 4985490, at *4, 11 (Mass.Super.Ct. Oct. 19, 2011);  *Paisley v. GMAC Mortg., LLC*, PLCV2010-01077B, 2011 WL 1663092, at *1 (Mass.Super.Ct. Feb. 25, 2011).

[19] Nor have Plaintiffs alleged facts to demonstrate "bad faith or an absence of good faith," an independent and further element of the cause of action.  *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 456 Mass. 562, 574 (2010).

[20] For the price paid at a foreclosure sale to invalidate that sale, it must in turn be "grossly inadequate."  *See Chartrand v. Newton Trust Co.*, 296 Mass. 317, 321 (1936).

*see also Marcus v. Collamore*, 168 Mass. 56, 57-58 (1897) (Holmes, J.).  When the solitary

function of a mortgagee's obligations under this doctrine is to ensure that a property is foreclosed

upon for a fair price, but no sale has even taken place, the doctrine is inapplicable.  This doctrine

certainly cannot be invoked to somehow assert a duty to modify a mortgage loan, which

obligation does not even exist in the first place.  *MacKenzie*, 738 F.3d at 493.

Just as in *MacKenzie*, whether Plaintiffs are attempting a claim based upon the implied

covenant of good faith and fair dealing, or on a mortgagee's distinct duty of good faith in

exercising a power of sale, neither states a plausible claim as a matter of law.

> 7.   <u>Negligence</u>

The Plaintiffs' Count VII for Negligence also fails for lack of an actionable duty, as the

First Circuit recognized in *MacKenzie* as well.  738 F.3d at 495-96.  "To state a claim for

negligence under Massachusetts law, a plaintiff must allege:  '(1) a legal duty owed by defendant

to plaintiff;  (2) a breach of that duty;  (3) proximate or legal cause;  and (4) actual damage or

injury."  *Id.* at 495 (quotation omitted).  Plaintiffs generically assert in their Complaint, at ¶ 71,

that "the Defendants owed a duty to the Plaintiffs to comply with applicable provisions of

Massachusetts law governing the relationship between mortgagors and mortgagees, and in

particular M.G.L. c. 183, § 21, and M.G.L. c. 244 §§ 35A and 35B."  Defendants have shown

*supra* why they in fact did comply with those statutes.  In any event, the First Circuit in

*MacKenzie* categorically recognized that "[t]he relationship between a borrower and lender does

not give rise to a duty of care under Massachusetts law."  *Id.* (citations omitted).  "Where an

independent duty of care exists, the violation of a statute or regulation can provide evidence of a

breach of that duty, even if the statute or regulation itself does not create a private right of action.

But in the absence of an independent duty, a plaintiff cannot proceed with a negligence claim

based solely on a statutory or regulatory violation." *Id.* at 496. A negligence claim based on nothing more than a purported failure to comply with foreclosure statutes must be dismissed.

In addition, this claim is also forbidden by the economic loss doctrine, since any damages that the Plaintiffs assert are truly economic in nature. "[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469 (2009) (citation omitted); *see Aldrich v. ADD Inc.*, 437 Mass. 213, 222-23 (2002) (requirement for "plaintiffs' pleadings [to] allege physical property damage sufficient to state a cause of action for negligence"). While the Plaintiffs make conclusory assertions in numbered paragraph 73 of their Complaint that they have supposedly suffered "physical harm" as well as "physical and emotional distress," as a result of Defendants' purported negligence, there are no facts anywhere in the Complaint to substantiate these bare assertions.[21] The Defendants breached no actual duty of care, and Plaintiffs do not allege beyond bald assertions that they have suffered anything other than economic loss. Plaintiffs' claim for Negligence fails to state a plausible claim for both reasons.

8.   Intentional or Negligent Infliction of Emotional Distress

The Plaintiffs likewise fail to state a plausible claim on Count VIII, for Intentional or Negligent Infliction of Emotional Distress,[22] because none of Defendants' actions, even as

---

[21] One cannot assert emotional distress in conclusory fashion. *Polay v. McMahon*, 468 Mass. 379, 388 (2014). When damages constitute a required element of a cause of action, but a plaintiff only makes "conclusory assertions" of those damages, this is "insufficient as a matter of law," and such cause of action must be dismissed. *See Hansmann v. Nationstar Mortg., LLC*, No. 13-P-1068, 2014 WL 2861803, at *2 (Mass.App.Ct. June 25, 2014).

[22] While this Count is also headed as "Negligent" Infliction of Emotional Distress, the substance of numbered paragraphs 75-77 on their face is an assertion of the *intentional* tort. In any event, it is pellucid that a negligence-based claim would fail as well, for failure to adequately allege either negligence or physical harm manifested by objective symptomatology. *Rodriguez v. Cambridge Hous. Auth.*, 443 Mass. 697, 701 (2005) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). As already stated *supra*, Defendants have not committed any negligence in the absence of any cognizable tort duty that they have breached. *Young*, 717 F.3d at 239 (citation omitted);

alleged, were either extreme and outrageous or caused Plaintiffs severe emotional distress.  "To make out a claim of intentional infliction of emotional distress, the plaintiffs [a]re required to show (1) that [defendants] intended, knew, or should have known that [their] conduct would cause emotional distress;  (2) that the conduct was extreme and outrageous;  (3) that the conduct caused emotional distress;  and (4) that the emotional distress was severe."  *Polay v. McMahon*, 468 Mass. 379, 385 (2014) (citations omitted).  "The standard for making a claim of intentional infliction of emotional distress is very high."  *Polay*, 468 Mass. at 385 (citations omitted).

> Liability cannot be predicated on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," nor even is it enough "that the defendant has acted with an intent which is tortious or even criminal, that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."

*Id.* (quotation omitted).  "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quotations omitted) (brackets in original).  "Severe emotional distress means more than 'mere emotional responses including anger, sadness, anxiety and distress, which, though blameworthy, are often not legally compensable.'"  *Lund v. Henderson*, --- F.Supp.2d. ---, Civ. No. 11-11413-NMG, 2014 WL 2321477, at *8 (D.Mass. May 27, 2014) (quoting *Kennedy v. Town of Billerica*, 717 F.3d 520, 530 (1st Cir. 2010)).[23]

As the First Circuit held in *Young*, a claim for intentional infliction of emotional distress in a dispute over a desired mortgage loan modification should be dismissed on a Rule 12(b)(6) motion when "the complaint alleges no facts showing that [defendant] acted with the requisite intent or that the inconvenience and agitation [plaintiff] endured rose to such a level that 'no

---

*Breyan v. Shagory*, No. 09-P-1597, 2011 WL 1186277, at *1 (Mass.App.Ct. Mar. 31, 2011).  Nor do the Plaintiffs even attempt to allege that they have suffered physical harm corroborated by verifiable symptomatology.
[23] *See also Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976).

reasonable [person] could be expected to endure it.'"  717 F.3d at 240.  Unsurprisingly, the case

law has consistently dismissed emotional distress claims in the foreclosure or modification

context, for failure to sufficiently allege either extreme or outrageous conduct, or severe

emotional distress.  "'[W]hile home foreclosure is a terrible event and likely fraught with unique

emotions and angst,' foreclosures, even ones that may involve improper conduct, do not readily

'go beyond all possible bounds of decency,' nor are they 'atrocious and utterly intolerable in a

civilized community.'"  *McBride v. Am. Home Mortg. Servicing Inc.*, Civ. No. 11-10998-RWZ,

2012 WL 931247, at *5 (D.Mass. Mar. 19, 2012) (quotations omitted).  A plaintiff's "allegations

that [a servicer] mishandled his HAMP application . . . do not meet this high standard [because

f]ailure to consider a borrower for a mortgage modification has been held to not rise to the level

of actionable conduct for a claim of intentional infliction of emotional distress."  *Payton v. Wells

Fargo Bank, N.A.*, Civ. No. 12-11540-DJC, 2013 WL 782601, at *4 (D.Mass. Feb. 28, 2013).[24]

 Here, the allegations in the Plaintiffs' Complaint, at ¶¶ 75-77, which are conclusory

statements attempting to parrot the elements of an emotional distress claim, are inadequate.  *See,

e.g.*, *Iqbal*, 556 U.S. at 678.  The Complaint alleges no facts to clear the high and onerous bar to

demonstrate either extreme and outrageous conduct or severe emotional distress beyond pure

conclusory allegations.  *See, e.g.*, *Polay*, 468 Mass. at 388 ("This statement does not constitute

an allegation of fact but rather a recitation of the element of severe emotional distress.")

(citations omitted).  Count VIII of the Complaint states no plausible claims as well.

## IV. CONCLUSION

 WHEREFORE, Defendants request that their Motion be granted, this action be dismissed

with prejudice, and this Court grant such other and further relief as is proper and just.

---

[24] *See also Epps v. Bank of Am., N.A.*, SUCV2012-01282, 2013 WL 7196330, at *6 (Mass.Super.Ct. June 18, 2013); *Calautti v. Am. Home Mortg. Servicing, Inc.*, No. 10-0609A, 2012 WL 5240262, at *7 (Mass.Super.Ct. Aug. 7, 2012);  *Anilus v. OneWest Bank, FSB*, NOCV2010-01774, 2011 WL 2735052, at *3 (Mass.Super.Ct. May 3, 2011).

Respectfully submitted,

DEFENDANTS
THE BANK OF NEW YORK MELLON f/k/a THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
SASCO 2005-16 TRUST FUND and
NATIONSTAR MORTGAGE LLC
By their attorneys,

_____/s/ Matthew A. Gens_____
James B. Fox, Esquire (BBO No. 176520)
Matthew A. Gens, Esquire (BBO No. 675393)
BERNKOPF GOODMAN LLP
Two Seaport Lane, 9th Floor
Boston, MA  02210
Tel: (617) 790-3000
Fax: (617) 790-3300
jfox@bg-llp.com
mgens@bg-llp.com

Dated:  November 11, 2014

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

or sent by first-class mail to any persons indicated as non-registered participants on this date.

Signed under the pains and penalties of perjury this 11th day of November, 2014.

/s/ Matthew A. Gens

615945 v2/38755/132

21