UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID B. SULLIVAN and DONNA L. BECK, | : | |
| Plaintiffs, | : | |
| V. | : | CIVIL ACTION NO. 3:14-cv-14074 - MGM |
| THE BANK OF NEW YORK MELLON CORPORATION FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE SASCO 2005-16 TRUST FUND, and NATIONSTAR MORTGAGE, LLC, | : | |
| Defendants. | : | |

AMENDED VERIFIED COMPLAINT, APPLICATION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,
and REQUEST FOR JURY TRIAL

INTRODUCTION

1.      Plaintiffs David B. Sullivan and Donna L. Beck bring this amended complaint

for injunctive and monetary relief against Defendants The Bank of New York Mellon

Corporation f/k/a The Bank of New York, as Trustee for the SASCO 2005-16 Trust Fund and

Nationstar Mortgage, LLC for their failure to comply with the notice requirements set forth in

the Plaintiffs' mortgage and in M.G.L. c. 244, § 35A, for seeking to foreclose on the Plaintiffs'

mortgage without having acquired a valid assignment of the mortgage and without having first

made good faith efforts to avoid foreclosure, as required under M.G.L. c. 244, § 35B, and for

unfair and deceptive business practices , in violation of M.G.L. c. 93A. In addition to monetary

relief, Plaintiffs David B. Sullivan and Donna L. Beck seek immediate injunctive relief in the form of a Temporary Restraining Order and Preliminary Injunction halting the scheduled foreclosure sale of the Plaintiffs' home and enjoining the scheduling of any future foreclosure sales of their home pending the resolution of their claims set forth in this Verified Complaint.

## JURISDICTION

2.      Plaintiffs David B. Sullivan and Donna L. Beck originally filed a Verified Complaint in the Commonwealth of Massachusetts Superior Court pursuant to General Laws Chapter 212, § 4, Chapter 213, § 1A, and Chapter 214, § 1, as they alleged claims for relief at law and equity.

3.      On or about November 4, 2014, the Defendants removed the action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1332, 1441 & 1446, alleging that there is complete diversity of the parties pursuant to 28 U.S.C. § 1332(a).

## PARTIES

4.      Plaintiffs David B. Sullivan and Donna L. Beck (hereafter referred to as "the Plaintiffs") are a married couple who reside with their two children at 92 Lakeshore Drive in Monson, MA (hereafter referred to as the "Property").

5.      Defendant The Bank of New York Mellon Corporation is a New York banking and financial services corporation, and was formerly known as The Bank of New York, and has a principal place of business at One Wall Street, New York, NY.

6.      The Bank of New York Mellon Corporation is the Trustee for the SASCO 2005-16 Trust Fund which is a trust formed under the laws of the State of New York, and has a principal place of business at 500 Grant Street, Suite 1000, Pittsburgh, PA.

7.     The Bank of New York Mellon Corporation f/k/a The Bank of New York, as

Trustee for the SASCO 2005-16 Trust Fund (hereafter referred to as "Bank of New York")

regularly acquires property and transacts business within the Commonwealth of Massachusetts.

8.     Defendant Nationstar Mortgage LLC (hereafter referred to as "Nationstar") is a

Delaware limited liability company with a principal place of business at 350 Highland Drive,

Lewisville, TX. Nationstar regularly services mortgages on property and transacts business

within the Commonwealth of Massachusetts.

9.     Nationstar entered into a Servicer Participation Agreement with the Federal

National Mortgage Association ("Fannie Mae") on September 24, 2010, and at all times

relevant to this Amended Verified Complaint was and continues to be obligated to comply with

published guidelines under the Home Affordable Modification Program (HAMP).

### FACTS RELATING TO THE PLAINTIFFS' LOANS

10.     Plaintiff David Sullivan purchased the Property on June 28, 2005 for the sum of

$280,500.00 with two simultaneous loans from E-Loan, Inc. *See*, Affidavit of David B. Sullivan

filed contemporaneously in the Superior Court with the original Verified Complaint (hereafter

"Sullivan Aff."), ¶¶ 3 and 4.

11.     The first loan was in the amount of $224,400.00, or 80% of the purchase price of

the home. The loan was for a term of thirty years, and monthly payments on this loan for the

first ten years were for interest only. Monthly payments on this loan started at $1,075.25, and

were scheduled to increase to $1,575.48 after the ten years of interest only payments. *See*,

Sullivan Aff., ¶ 5.

12.     Plaintiff David Sullivan is the only Borrower under the note for this loan.

13.     The first loan from E-Loan, Inc. was secured by a mortgage given by both Plaintiffs dated June 29, 2005 (hereafter "the First Mortgage"). The mortgagee under the First Mortgage is listed as Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for E-Loan, Inc.  *See*, Sullivan Aff., ¶ 6.

14.     Paragraph 22 of the First Mortgage provides, in relevant part:

**22.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.**

*See*, Sullivan Aff., ¶ 6 (original emphasis).

15.     The second loan from E-Loan, Inc. was in the amount of $56,100.00, or 20% of the purchase price of the home. Although this loan was fashioned as a "Home Equity Line of Credit," the Lender was fully aware that Mr. Sullivan would be immediately borrowing the maximum principal limit of $56,100.00 in order to complete the purchase of the Property. The HUD-1 Settlement Statement clearly reflects that the proceeds from this so-called "Home Equity Line of Credit" in the amount of $56,100.00 were a necessary and integral part of the purchase of the home. *See*, Sullivan Aff., ¶ 7.

16.     As with the first loan, Plaintiff David Sullivan is the only borrower under the note for this loan.

4

17.     The second loan from E-Loan, Inc. was also secured by a mortgage given by both Plaintiffs, and also listed MERS as the mortgagee. *See*, Sullivan Aff., ¶ 8.

18.     The two loans from E-Loan, Inc. were underwritten as part of a loan transaction in which the combined loan to value ratio was 100 per cent. *See*, Sullivan Aff., ¶ 9.

19.     The Uniform Residential Loan Application signed by Mr. Sullivan on the same date the Plaintiffs received the two so-called "80/20" loans from E-Loan, Inc. clearly reflects that the ratio of the Plaintiffs' housing related and recurring monthly debt to their monthly income exceeded 38 percent. *See*, Sullivan Aff., ¶ 10.

### FACTS RELATING TO EFFORTS BY THE PLAINTIFFS TO OBTAIN A MODIFICATION OF THE FIRST MORTGAGE OR OTHER DEBT RELIEF

20.     Notwithstanding the fact that the Plaintiffs' monthly debt obligations consumed an excessive percentage of their monthly income, they genuinely believed at the time they obtained the loans that they would be able to make the monthly payments under the two loans from E-Loan, Inc.  Mr. Sullivan had recently assumed new job-related responsibilities as the Founding Director of the Western New England College Polling Institute, and his employer had assured him that he would receive additional compensation for this new undertaking. *See*, Sullivan Aff., ¶ 11.

21.     However, the promised increase in Mr. Sullivan's compensation was not forthcoming, and the Plaintiffs also experienced significant increases in their personal and household expenses.  *See*, Sullivan Aff., ¶ 12.

22.     Toward the end of 2009, the Plaintiffs had virtually exhausted their savings in order to keep up with the two monthly mortgage payments. Beginning in November 2009, the

Plaintiffs began to request a modification of the terms of the mortgages from the companies servicing the two loans. *See*, Sullivan Aff., ¶ 13.

23.    The Plaintiffs' First Mortgage was initially serviced by Aurora Loan Services LLC ("Aurora"). On information and belief, Nationstar took over as the servicer of the Plaintiffs' First Mortgage in or around July 1, 2012. *See*, Sullivan Aff., ¶ 14.

24.    Beginning in November 2009 and continuing for a period of roughly three and a half years, the Plaintiffs repeatedly submitted applications for modifications and other debt relief to the servicing companies, together with all the documentation requested by the servicers to support these applications. *See*, Sullivan Aff., ¶ 15.

25.    After submitting the applications, long periods of time would elapse without any word from the servicers. In response to their numerous inquiries, the Plaintiffs would receive form letters or electronic messages stating that the applications were still being processed, or requesting documentation the Plaintiffs had already provided. *See*, Sullivan Aff., ¶ 16.

26.    On a number of occasions, the servicing companies refused to process the Plaintiffs' HAMP applications without first receiving income documentation from Plaintiff Donna Beck who was not a borrower under the original notes.

27.    On two different occasions, the Plaintiffs received notification from Aurora that separate applications for a loan modification under the Home Affordable Modification Program ("HAMP") had been denied for reasons which were inaccurate and demonstrably false. *See*, Sullivan Aff., ¶ 17.

28.    Following the denials of their applications for HAMP modifications, the Plaintiffs received offers of modifications from Aurora which, instead of providing the Plaintiffs with some form of debt relief, called for monthly payments which were significantly

higher than their existing monthly payments which were already unaffordable to them. *See*, Sullivan Aff., ¶ 18.

29.    The terms of the second modification offered by Aurora called for monthly principal and interest payments which were roughly $400 higher than the existing monthly payments, and the Plaintiffs would not have been able to reasonably afford to repay the modified loan.

30.    Under the terms of the second modification offered by Aurora, the combined loan to value ratio based upon the original purchase price of the house exceeded 100 per cent, and the ratio of the Plaintiffs' housing related and recurring monthly debt to their monthly income would continue to exceed 38 percent by a substantial margin.

31.    Because the Plaintiffs were desperate to avoid foreclosure and find a way to stay in their home, on February 9, 2012 the Plaintiffs signed the second modification offered by Aurora and made their first payment under the modification.

32.    The Loan Modification Agreement did not constitute a new loan, but rather "amend[ed] and supplement[ed]" both the Plaintiffs' First Mortgage, under which Plaintiff Donna Beck is listed as a borrower along with Plaintiff David B. Sullivan, and the original note in the amount of $224,400, under which **only** Plaintiff David Sullivan is obligated as a borrower.

33.    The putative "Lender" under the Loan Modification Agreement is Aurora Bank FSB, although Aurora Bank FSB was not the current holder of the First Mortgage.

34.    After entering into the Loan Modification Agreement, it became apparent to the Plaintiffs that the payments under this modification were unaffordable to them and they would

be unable to afford to repay the modified mortgage loan according to its scheduled payments, and the Plaintiffs filed for bankruptcy in an attempt to save their home.

35.     In March 2013, the Plaintiffs each received identical correspondence from Nationstar, including: a) letters dated March 18, 2013 notifying them that they were in default on their first loan and requiring that they pay the amount of $19,189.68 within thirty-five (35) days or the full amount of principal and interest due on the loan would be accelerated; b) separate letters dated March 19, 2013 notifying them that they were in default on the first loan and requiring that they pay the amount of $19,119.68 within one hundred and fifty (150) days or the full amount of principal and interest due on the loan would be accelerated; and c) a third letter dated March 19, 2013 notifying them of their right to request a modified mortgage loan. *See*, Sullivan Aff., ¶ 19.

36.     The Plaintiffs responded to the above correspondence by submitting yet another request for a loan modification, and over the following two months they submitted all the completed forms and supporting documentation requested by Nationstar. *See*, Sullivan Aff., ¶ 20.

37.     On the first page of the Plaintiffs' Request for Mortgage Assistance (RMA) dated May 29, 2013, the Plaintiffs highlighted the fact that Plaintiff Donna Beck was not a co-borrower under the note, and was listed on the RMA only because she is on the deed (and is a "Borrower" on the Mortgage).

38.     Despite having sent Nationstar all of the documentation it had requested from them, the Plaintiffs received a notification from Nationstar that their application for a HAMP modification had been denied because the Plaintiffs had not submitted required documentation.

39.     After Mr. Sullivan sent an email to Nationstar challenging the accuracy of the conclusion set forth in the letter of denial, the Plaintiffs received a letter dated July 11, 2013 advising them that their HAMP application had been rejected because they had failed to provide certain documentation which had not been previously requested and other documentation which the Plaintiffs had already submitted to Nationstar and Aurora on multiple prior occasions. Once again, included among the requested documentation was income information for Plaintiff Donna Beck who was not a borrower under the original note. This letter further reassured the Plaintiffs that Nationstar had created a new HAMP case for the Plaintiffs' mortgage account, and that Nationstar would "happily review the account for payment assistance." *See*, Sullivan Aff., ¶ 21.

40.     In August 2013, the Plaintiffs each received three letters from Nationstar dated August 21, 2013 which were similar to the letters they received back in March 2013:

a.     The first letter notified the Plaintiffs that they were in default on their first loan and required that they pay the amount of $28,976.58 within thirty-five (35) days or the full amount of principal and interest due on the loan would be accelerated. The letter further stated that Nationstar intends to enforce the provisions of the Plaintiffs' original Note and Mortgage, and that if they failed to pay the above sum within the specified period, Nationstar would accelerate the entire amount of principal and interest due on the loan and invoke any remedies permitted under the mortgage, including the foreclosure sale of the Plaintiffs' home. This letter also stated that "[y]ou are hereby informed that you have the right to 'cure' or reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and sale."

      b.     The second letter notified the Plaintiffs that they were in default on their first loan and required that they pay a lower amount of $28,906.58 within one hundred and fifty (150) days or the full amount of principal and interest due on the loan would be accelerated. Appended to this letter was a page entitled "Additional Disclosures" in which the Plaintiffs were advised that the current holder of their mortgage was "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE SASCO 2006-16 TRUST FUND."

      c.     A third letter again notified the Plaintiffs of their right to request a modified mortgage loan. This letter clearly specified that Nationstar's records indicated that the Plaintiffs were eligible to request a mortgage modification.

*See*, Sullivan Aff., ¶ 22.

41.     In response to the above letters, the Plaintiffs once again completed a new loan modification application, compiled all the required supporting documentation, converted all the documents to a pdf format, and submitted the full application package to Nationstar by email on August 25, 2013. *See*, Sullivan Aff., ¶ 23.

42.     Despite the explicit invitation in the August 21, 2013 letter from Nationstar to submit a new request for a modified mortgage loan and the assurance given to the Plaintiffs in the earlier July 11th letter that Nationstar had opened a new HAMP case for their account, the Plaintiffs did not receive any further communication from Nationstar regarding their eligibility for a loan modification. *See*, Sullivan Aff., ¶ 24.

43.     The Defendants allege that Nationstar sent a letter to Plaintiff David Sullivan dated August 29, 2013 requesting additional documentation from him. However, neither of the Plaintiffs have any recollection of receiving this correspondence. The Plaintiffs have retained

all correspondence they have received from Nationstar in both electronic computer files and physical files organized chronologically. Plaintiff David Sullivan has conducted an exhaustive search of the Plaintiffs' records, and this letter is not among the records.

44.     The letter alleged to have been sent by Nationstar claims that it was missing documentation for **all** sources of income, even though there is no question that Plaintiff David Sullivan, as the only borrower obligated under the note, submitted two of his most recent pay stubs with the original application. Although she is not a borrower under the note, Plaintiff Donna Beck supplied a sample of a pay stub from 2012 because she was not scheduled to receive another pay check until September 20, 2013, and specified as much on the pay stub she submitted.

45.     The letter alleged to have been sent by Nationstar next claims that it was missing the "IRS 4506-T signed by borrowers", despite the fact that a completed IRS form 4506-T signed by each of the Plaintiffs on August 24, 2013 was submitted with the Plaintiffs' original application.

46.     The letter alleged to have been sent by Nationstar lastly claims that it was missing the most recent quarterly or year to date Profit & Loss statement for unspecified gross income, expenses, and net income. The most recent Profit and Loss statement prepared by Plaintiff Donna Beck for her business as an artist was included as Schedule C to the Plaintiffs' tax return for the year ending December 31, 2012, and reflects a net **loss** of $2,143.00. A complete copy of the Plaintiffs' tax return was submitted to Nationstar with the Plaintiffs' original application.

47.     After the Plaintiffs submitted the completed modification application, no one from Nationstar contacted the Plaintiffs about scheduling a meeting either in person or over the

phone to discuss their modification application or alternatives to foreclosure. *See*, Sullivan Aff., ¶ 25.

48.     The Defendants never sent any correspondence to the Plaintiffs reflecting a final determination on their application for a HAMP modification.

49.     The Defendants never sent any correspondence stating that the Plaintiffs' application for a HAMP modification had been denied and never took any steps to consider the Plaintiffs for another foreclosure prevention alternative.

50.     In late August or early September of this year, the Plaintiffs received separate notices dated August 29, 2014 informing them that a foreclosure sale of their home had been scheduled for September 23, 2014 at 12:00 PM. *See*, Sullivan Aff., ¶ 26.

51.     However, the first publication of the notice of the scheduled foreclosure sale did not occur until September 4, 2014, less than the required twenty-one days prior to the scheduled sale date, and the sale was cancelled. *See*, Sullivan Aff., ¶ 27.

52.     The Plaintiffs each received new notices dated September 25, 2014 informing them that a foreclosure sale of their home has been scheduled for October 16, 2014 at 12:00 p.m. *See*, Sullivan Aff., ¶ 28.

53.     At an initial hearing in the Superior Court on October 15, 2014, the parties mutually agreed to continue the hearing and the Defendants agreed to postpone the foreclosure sale. The Defendants subsequently rescheduled the sale for December 11, 2014.

54.     By letter dated November 26, 2014, the Plaintiffs were notified that the Defendants have postponed the sale until January 16, 2015 at 1:00 p.m.

FACTS RELATING TO THE SASCO 2006-16 TRUST FUND AND
THE LATEASSIGNMENT OF THE FIRST MORTGAGE TO
BANK OF NEW YORK, AS TRUSTEE

55.     Shortly after the Plaintiffs originally granted the First Mortgage to MERS, Bank

of New York entered into a Pooling and Servicing Agreement ("PSA") dated August 1, 2005,

creating a trust into which multiple mortgages would be pooled and securitized (hereafter "the

Trust").

56.     The Trust was structured and operated in such a way as to achieve and maintain

the status of a real estate mortgage investment conduit under applicable provision of the

Internal Revenue Code (hereafter "the Tax Code"). *See,* Heisler Aff, Exhibit 1, p. 7 of 149,

and Section 10.01, p. 104 of 149.

57.     Under the terms of the PSA, Bank of New York assumed the role of "Trustee."

The "Depositor" under the PSA was Structured Asset Securities Corporation, and the "Master

Servicer" under the PSA was Aurora Loan Services LLC. *See,* Affidavit of Hugh Heisler filed

contemporaneously with the Plaintiffs' original Verified Complaint filed in the Superior Court

(hereafter "Heisler Aff."), Exhibit 1, pp. 1 and 7 of 147.

58.     The Closing Date of the Trust was August 31, 2005. *See*, Heisler Aff., Exhibit 1,

p. 18 of 149.

59.     The PSA provides that on or before the Closing Date of the Trust the Depositor

would sell, transfer and assign to the Bank of New York, as Trustee, all of the Depositor's

right, title and interest in the mortgage loans which were scheduled to form the corpus of

the Trust Fund. *See,* Heisler Aff, Exhibit 1, Section 2.01, pp. 39 – 42 of 149.

60.     Consistent with the above requirement, the Depositor warranted to Bank of

New York in the PSA that it held good title to each of the notes and corresponding

mortgages as of the Closing Date. *See,* Heisler Aff, Exhibit 1, Section 2.03, pp. 44 – 45 of 149.

61.     Under the PSA, the Trustee may receive and accept the transfer or assignment of Mortgage Loans only from the Depositor. *See generally*, Heisler Aff., Exhibit 1, Sections 2.01 through 2.05, pp. 39 – 47 of 149.

62.     The Depositor was required under the PSA to deliver to Bank of New York, as Trustee, the complete file on each mortgage loan, including the original note endorsed in blank without recourse, the original mortgage creating a first lien on the mortgaged property, an assignment of the mortgage in recordable form, and all recorded intervening assignments of the mortgage. *See,* Heisler Aff, Exhibit 1, pp. 14 and 26, and Section 2.01, pp. 40 – 45 of 149.

63.     Within 45 days of the Closing Date, Bank of New York, as Trustee, was required under the PSA to complete a review of the Mortgage Files for each Mortgage Loan and produce an interim certification as to the completeness of the Mortgage Files. *See,* Heisler Aff, Exhibit 1, Section 2.02(b), p. 43 of 149.

64.     Under the PSA, if Bank of New York, as Trustee, did not receive delivery of documents constituting the mortgage file for a particular mortgage loan, it could require that the Depositor repurchase the loan or provide a Substitute Mortgage Loan. However, the PSA explicitly prohibits any such substitution more than two years after the Closing Date and further prohibits any such substitution unless the Trustee receives an Opinion of Counsel that the substitution will not jeopardize the favorable tax treatment accorded to the Trust as a Real Estate Mortgage Investment Conduit, or REMIC. *See,* Heisler Aff, Exhibit 1, Section 2.02(c), p. 43 of 149, and Section 2.05, pp. 46 – 47 of 149.

65.     Bank of New York, as Trustee, is required under the terms of the PSA to conduct matters relating to Trust assets so as to maintain the status of the Trust as a REMIC under the applicable provisions of the Tax Code, and Bank of New York is prohibited from taking any action or omitting to take any action which would jeopardize such status. *See,* Heisler Aff, Exhibit 1, Section 10.01 and 10.02, pp. 104 – 106 of 149.

66.     Under the PSA, Bank of New York is expressly prohibited from acquiring any assets or accepting any contribution after the Closing Date unless it first receives an Opinion of Counsel that any such acquisition or acceptance will not jeopardize the favorable tax treatment accorded to the Trust as a Real Estate Mortgage Investment Conduit, or REMIC. *See,* Heisler Aff, Exhibit 1, Section 10.02, p. 106 of 149.

67.     The PSA is governed by the laws of the State of New York. *See,* Heisler Aff, Exhibit 1, Section 11.06, p. 109 of 149.

68.     The Plaintiffs' First Mortgage was not assigned to Bank of New York, as Trustee until March 12, 2014, more than eight and a half years after the Closing Date of the Trust. In particular, MERS executed an assignment of the Plaintiffs' First Mortgage to Aurora Loan Services LLC on April 6, 2011, and Aurora Loan Services LLC assigned the Mortgage to Bank of New York on March 12, 2014. This latter assignment was recorded with the Hampden County Registry of Deeds on April 12, 2104 at Book 18735, Page 138. *See,* Heisler Aff, Exhibits 2 and 3.

69.     There is also no evidence that the Depositor under the PSA, Structured Asset Securities Corporation, ever received a transfer or assignment of the Plaintiffs' First Mortgage or owned the mortgage at any time prior to or after the Closing Date of the Trust. *See,* Heisler Aff, Exhibits 2 and 3.

70.     The Plaintiffs do not have alternative housing available to them, and the loss of their home through foreclosure would cause them to suffer immediate and irreparable harm for which they have no adequate remedy at law.

FIRST CAUSE OF ACTION:
BREACH OF CONTRACT

71.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 70 above and incorporate those allegations here by reference.

72.     The Defendants failed to provide the Plaintiffs with notice of their right to bring a court action to assert the non-existence of a default or any other defense to acceleration of their loan and the sale of their home, and the Defendants have breached paragraph 22 of the First Mortgage contract.

73.     The Defendants are expressly prohibited under the terms of the First Mortgage contract from accelerating payment of the loan and exercising the statutory power of sale in the Mortgage without first complying with the notice requirements in the contract, and the Defendants have no legal right or entitlement to conduct a foreclosure auction of the Plaintiffs' home.

74.     Despite the contractual protections afforded to the Plaintiffs in the First Mortgage, the Plaintiffs are faced with the loss of their home through a foreclosure sale.

75.     Due to the breach of the Defendants contractual obligations under the First Mortgage, the Plaintiffs are entitled to specific performance of the Defendants' contractual obligations under the mortgage, and, in particular, to an order enjoining the scheduled foreclosure sale until such time as the Defendants comply with the notice requirements set forth in paragraph 22 of the mortgage, an order enjoining the Defendants from rescheduling a

foreclosure sale of the Plaintiffs home pending the resolution of the claims set forth in this

Amended Verified Complaint or further order of the court, and an award of damages resulting

from the premature acceleration of their debt, including but not limited to any consequential

fees or charges assessed against them.

SECOND CAUSE OF ACTION:
VIOLATION OF M.G.L. c. 183, § 21

76.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 75 above

and incorporate those allegations here by reference.

77.     The Defendants have scheduled a foreclosure sale of the Plaintiffs' home

without "first complying with the terms of the mortgage and with the statutes relating to the

foreclosure of mortgages by the exercise of a power of sale," as required under M.G.L. c. 183, §

21.

78.     The Defendants have failed to strictly comply with the explicit requirements of

paragraph 22 of the First Mortgage, in violation of M.G.L. c. 183, § 21, and the Plaintiffs are

entitled to an order enjoining the scheduled foreclosure sale, and an order enjoining the

Defendants from rescheduling a foreclosure sale of the Plaintiffs home without first strictly

complying with the terms of the mortgage.

THIRD CAUSE OF ACTION:
VIOLATION OF M.G.L. c.244, § 35A

79.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 78 above

and incorporate those allegations here by reference.

80.     The Defendants sent a notice to the Plaintiffs which wrongfully  informed them

that payment of the entire amount of principal and interest due under their loan would be

17

accelerated if they failed to cure the amount of the default on the loan within thirty-five (35)

days, in violation of M.G.L. c. 244, § 35A(h)(2).

81.     The Defendants failed to provide the Plaintiffs with a notice that informed them

of the name and address of the current mortgagee, in violation of M.G.L. c. 244, §35A(h)(4).

82.     The Defendants provided the Plaintiffs with two separate notices dated August

21, 2014 which set forth two different and conflicting past due amounts which they would have

to pay in order to cure the default in the loan, in violation of M.G.L. c. 244, §35A(h)(1).

83.     As a result of the above violations, the Defendants have failed to provide the

Plaintiffs with a notice which complies with the explicit requirements of M.G.L. c. 244, § 35A,

and the Defendants were not legally entitled to accelerate payment of the Plaintiffs loan or

otherwise enforce the First Mortgage.

84.     Due to the Defendants violation of M.G.L. c. 244, § 35A, the Plaintiffs are

entitled to an order enjoining the scheduled foreclosure sale, and an order enjoining the

Defendants from rescheduling a foreclosure sale of the Plaintiffs' home without first complying

with the notice requirements of Section 35A.

FOURTH CAUSE OF ACTION:
VIOLATION OF M.G.L. c.244, § 35B

85.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 84 above

and incorporate those allegations here by reference.

86.     The first loan from E-Loan, Inc. to the Plaintiffs required payment of only

interest for a period of ten (10) years and the combined loan transactions between the Plaintiffs

and E-Loan, Inc. had a loan to value ratio which exceeded 95 per cent, and the loan which is

secured by the First Mortgage meets the definition of a "Certain mortgage loan" as that term is defined in M.G.L. c. 244, § 35B.

87.     Even if the Loan Modification Agreement signed by the Plaintiff on February 2, 2012 is considered to be a new loan, under the terms of this modification, the combined loan to value ratio based upon the original purchase price of the house exceeded 100 per cent, and the ratio of the Plaintiffs' housing related and recurring monthly debt to their monthly income continued to exceed 38 percent by a substantial margin, and the modified loan would also meet the definition of a "Certain mortgage loan" as that term is defined in M.G.L. c. 244, § 35B.

88.     The Loan Modification Agreement signed by the Plaintiff on February 2, 2012 did not constitute a "modified mortgage loan" within the meaning of M.G.L. c. 244, § 35B insofar as this modification required monthly payments in excess of the Plaintiffs' pre-existing payments, and the Plaintiffs were not able under this loan modification to reasonably afford to repay the loan according to its scheduled payments.

89.     In 2013, the Defendants wrongfully refused to process the Plaintiffs' applications for a modified mortgage loan without receipt of documentation well in excess of that called for under M.G.L. c. 244, § 35B(c).

90.     The Defendants wrongfully refused to process the Plaintiffs' applications for a modified mortgage loan unless they provided documentation which had already been submitted to the Defendants with the original applications.

91.     The Defendants wrongfully refused to process the Plaintiffs' applications for a modified mortgage loan without receipt of documentation of the income and expenses of Plaintiff Donna Beck, even though she was not a borrower obligated under the note.

92.     Following receipt of the Plaintiffs' application for a HAMP modification in August 2013, the Defendants failed to provide a written assessment of the Plaintiffs' ability to make an affordable monthly payment, as required under M.G.L. c. 244, § 35B(b) & (c).

93.     Following receipt of the Plaintiffs' application for a HAMP modification in August 2013, the Defendants failed to either provide the Plaintiffs with a modified mortgage loan offer or a notice that no modified mortgage loan would be offered, as required under M.G.L. c. 244, § 35B(c).

94.     The Defendants have failed to take reasonable steps and make a good faith effort to avoid foreclosure, as required under M.G.L. c. 244, § 35B, and the Defendants are prohibited from publishing notices of the foreclosure sale of the Plaintiffs' home and proceeding with such a sale.

95.     Due to the Defendants violation of M.G.L. c. 244, § 35B, the Plaintiffs are entitled to an order enjoining the scheduled foreclosure sale, and an order enjoining the Defendants from rescheduling a foreclosure sale of the Plaintiffs' home without first complying with the requirements of Section 35B.

FIFTH CAUSE OF ACTION:
WRONGFUL FORECLOSURE

96.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 95 above and incorporate those allegations here by reference.

97.     The assignment of the Plaintiffs' First Mortgage to Bank of New York, as Trustee more than eight and a half years after the Closing Date of the Trust violated the explicit terms of the Pooling and Servicing Agreement which governed the Trust, as well as applicable provisions of the Tax Code.

98.     Acceptance of this conveyance by Bank of New York, as Trustee, in violation of the terms of the Trust was an *ultra vires* action by Bank of New York, as Trustee, and the conveyance is void under New York's Estates, Powers and Trusts Code, § 7-2.4.

99.     Insofar as the assignment of the First Mortgage to Bank of New York is void, and Bank of New York is not the holder or owner of the First Mortgage and has no legal power or authority to exercise the power of sale in the First Mortgage, the Plaintiffs are entitled to an order enjoining the scheduled foreclosure sale.

SIXTH CAUSE OF ACTION:
BREACH OF IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

100.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 99 above and incorporate those allegations here by reference.

101.     Bank of New York and Nationstar are bound by an implied covenant of good faith and fair dealing arising out of their contractual relationship with the Plaintiffs.

102.     The Defendants have breached the implied covenant of good faith and fair dealing by, among other things,  accelerating  payment of the Plaintiffs loan and proceeding with foreclosure without first complying with the terms of the Plaintiffs' mortgage; by initiating foreclosure proceedings without first complying with notice requirements under the terms of the mortgage and applicable provisions of Massachusetts law; by publishing notices of the foreclosure sale of the Plaintiffs' home without having first taken reasonable steps and made a good faith effort to avoid foreclosure, as required under applicable Massachusetts law; by refusing to process the Plaintiffs' application for a HAMP loan modification for reasons which are legally unsupportable and violate applicable HAMP guidelines; by failing to process the Plaintiffs' application for a HAMP loan modification in accordance with HAMP guidelines and

instructions; and by proceeding with foreclosure notwithstanding the fact that the Plaintiffs'

application for a HAMP loan modification was still pending.

103.    The actions and omissions of the Defendants as set forth above constitute a

breach of the implied covenant of good faith and fair dealing, and the Plaintiffs are entitled to

an order enjoining the scheduled foreclosure sale, and an award of damages.

SEVENTH CAUSE OF ACTION:
UNFAIR AND DECEPTIVE BUSINESS PRACTICES
IN VIOLATION OF G.L. c. 93A

104.    The Plaintiffs repeat the allegations set forth in paragraphs 1 through 103 above

and incorporate those allegations here by reference.

105.    At all times relevant to this complaint, Defendants Bank of New York and

Nationstar were engaged in trade or commerce in the Commonwealth of Massachusetts relating

to housing finance, loan servicing, foreclosure on mortgages, and the ownership of property.

106.    The Defendants have engaged in unfair and deceptive practices within the

meaning of M.G.L. c. 93A and the Attorney General's regulations published to enforce this law.

These unfair and deceptive practices have included but are not necessarily limited to the actions

and failures to act set forth in the preceding paragraphs of this Amended Verified Complaint,

and include the following:

a.    The Defendants failed to provide the Plaintiffs with a notice which

complied with the explicit terms of paragraph 22 of the First Mortgage, and instead sent

them a notice which was misleading and deceptive and failed to satisfy the requirements

of M.G.L. c. 183, § 21, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

b.    The Defendants failed to comply with M.G.L. c. 244, § 35A(h)(2) by

sending the Plaintiffs a misleading and deceptive notice which wrongfully  informed

22

them that payment of the entire amount of principal and interest due under their loan would be accelerated if they failed to cure the amount of the default on the loan within thirty-five (35) days, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

  c.  The Defendants failed to comply with M.G.L. c. 244, §35A(h)(4) by providing the Plaintiffs with a notice that failed to inform them of the name and address of the current holder of their mortgage, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

  d.  The Defendants failed to comply with M.G.L. c. 244, §35A(h)(1) by providing the Plaintiffs with two separate notices dated August 21, 2014 which set forth two different and conflicting past due amounts which they would have to pay in order to cure the default in the loan, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

  e.  The Defendants failed to comply with M.G.L. c. 244, § 35B by publishing notices of the foreclosure sale of the Plaintiffs' home  without having first taken reasonable steps and made a good faith effort to avoid foreclosure, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

  f.  The Defendants failed to comply with M.G.L. c. 244, § 35B by wrongfully refusing to process the Plaintiffs' application for a modified mortgage loan without receipt of documentation well in excess of that called for under M.G.L. c. 244, § 35B(c), in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16.

  g.  The Defendants wrongfully refused to process the Plaintiffs' application for a modified mortgage loan unless they provided documentation which had already been submitted to the Defendants with the original application, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16.

h.      The Defendants wrongfully refused to process the Plaintiffs' application for a modified mortgage loan without receipt of documentation of the income and expenses of Plaintiff Donna Beck, even though she was not a borrower obligated under the note, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

i.      The Defendants failed to comply with M.G.L. c. 244, § 35B(b) & (c) by failing to provide a written assessment of the Plaintiffs' ability to make an affordable monthly payment, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

j.      The Defendants failed to comply with M.G.L. c. 244, § 35B(c) by failing to either provide the Plaintiffs with a modified mortgage loan offer or a notice that no modified mortgage loan would be offered, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

k.      The Defendants engaged in unfair and deceptive acts and practices in the servicing of the Plaintiffs mortgage and loans by, among other things, repeatedly requesting documents and information which the Plaintiffs had already provided, chronically failing to respond to the Plaintiffs requests and inquiries in a timely or consistent fashion,  requiring the Plaintiffs to communicate with multiple individuals who had wildly varying familiarity with their mortgage and/or loan account, and persistently refusing to consider or offer other foreclosure prevention options to the Plaintiffs, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

l.      The Defendants engaged in unfair and deceptive acts and practices by refusing to process the Plaintiffs' application for a HAMP loan modification for reasons which are legally unsupportable and violate applicable HAMP guidelines, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

      m.     The Defendants engaged in unfair and deceptive acts and practices by failing to process the Plaintiffs' application for a HAMP loan modification in accordance with HAMP guidelines and instructions, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16;

      n.     The Defendants engaged in unfair and deceptive acts and practices by proceeding with foreclosure notwithstanding the fact that the Plaintiffs' application for a HAMP loan modification was still pending, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16; and

      o.     The Defendants engaged in unfair and deceptive acts and practices by proceeding with foreclosure even though the assignment of the Plaintiffs' First Mortgage to Bank of New York is void, and Bank of New York is not the holder or owner of the First Mortgage and has no legal power or authority to exercise the power of sale in the First Mortgage, in violation of M.G.L. c. 93A, § 2 and 940 C.M.R. 3.16.

107.    The Plaintiffs have suffered and continue to suffer actual and consequential damages as a result of the Defendants' unfair, misleading, and deceptive practices in violation of G.L. c. 93A.

108.    The unfair and deceptive practices of the Defendants described above forced the Plaintiffs to resort to filing for bankruptcy in an attempt to save their home. They also suffered a steep decline in their credit rating and a loss of credit worthiness, and they continue to face a loss of their home and possible homelessness. In addition, given the financial disruption and uncertainty attendant to the handling of the Plaintiffs mortgage and loans by the Defendants, Plaintiff Donna Beck has been unable to pursue longstanding plans to expand her business.

109.     The frustration, consternation and anxiety experienced by the Plaintiffs as a result of the Defendants' unfair and deceptive practices relating to the servicing of their loans and the persistent threat of losing their home have caused them to suffer bouts of sleeplessness, prolonged periods of depression, disruption and conflict in their interpersonal relations, a loss of motivation and chronic feelings of helplessness and severe emotional and physical distress.

110.     Plaintiff David Sullivan has suffered from Type I diabetes for over forty years, and the stress caused by the Defendants' wrongful conduct has made it more difficult for Mr. Sullivan to manage this illness. He has also sought relief from the persistent stress and anxiety caused by the Defendants conduct in increased consumption of alcohol.

111.     The Plaintiffs also reside in a small, tight-knit community, and they are active in local civic and professional groups and organizations. The publication of foreclosure notices has caused them deep humiliation and embarrassment, and adversely impacted their professional standing and reputation in the community and caused them to curtail their civic involvement.

112.     The financial uncertainty and resulting psychological impact on the Plaintiffs has also caused their children to suffer corresponding emotional harm which has required medical treatment and intervention.

113.     On October 31, 2014, the Plaintiff sent Defendants Bank of New York and Nationstar separate demand letters pursuant to G.L. c. 93A, §9.

114.     Defendants Bank of New York and Nationstar failed to respond to the demand letters with reasonable offers of settlement.

115.     The unfair and deceptive business practices of Defendants Bank of New York and Nationstar, as more fully described above, were and continue to be willful or knowing within the meaning of G.L. c. 93A, §9.

116.     The refusal of Defendants Bank of New York and Nationstar to grant relief upon demand was and is in bad faith, with knowledge or reason to know that their above-described acts or practices violated G.L. c. 93A, §2.

EIGHTH CAUSE OF ACTION:
NEGLIGENCE

117.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 116 above and incorporate those allegations here by reference.

118.     At all times relevant to this Amended Verified Complaint, the Defendants owed a duty to the Plaintiffs to comply with applicable provisions of Massachusetts law governing the relationship between mortgagors and mortgagees, and in particular M.G.L. c. 183, § 21, M.G.L. c. 244 §§ 35A and 35B, and guidelines and instructions related to HAMP.

119.     At all times relevant to this Amended Verified Complaint, the Defendants owed a duty to the Plaintiffs to interact and communicate with the Plaintiffs in good faith and deal with the Plaintiffs fairly on matters related to the servicing of the Plaintiffs' loans, identifying and promoting alternatives to foreclosure, and complying with their contractual and statutory obligations related to the exercise of the power of sale.

120.     The Defendants have acted negligently in their dealings and interactions with the Plaintiffs by, among other things, negligently accelerating  payment of the Plaintiffs loan and proceeding with foreclosure without first complying with the terms of the Plaintiffs' mortgage; by negligently initiating foreclosure proceedings without first complying with notice

requirements under the terms of the mortgage and applicable provisions of Massachusetts law; by negligently publishing notices of the foreclosure sale of the Plaintiffs' home without having first taken reasonable steps and made a good faith effort to avoid foreclosure and offer alternatives to foreclosure, as required under applicable Massachusetts law; by negligently processing the Plaintiffs' multiple applications for loan modifications and negligently refusing to consider or offer other foreclosure prevention options, by negligently refusing to process the Plaintiffs' application for a HAMP loan modification for reasons which are legally unsupportable and violate applicable HAMP guidelines; by negligently failing to process the Plaintiffs' application for a HAMP loan modification in accordance with HAMP guidelines and instructions; and by negligently proceeding with foreclosure notwithstanding the fact that the Plaintiffs' application for a HAMP loan modification was still pending.

121.    As a direct and proximate result of the Defendants' negligence, the Plaintiffs have suffered and continue to suffer physical and emotional harm, inconvenience, discomfort, anxiety, physical and emotional distress, and actual and consequential damages.

122.    The negligent actions of the Defendants described above forced the Plaintiffs to resort to filing for bankruptcy in an attempt to save their home. They also suffered a steep decline in their credit rating and a loss of credit worthiness, and they continue to face a loss of their home and possible homelessness. In addition, given the financial disruption and uncertainty attendant to the handling of the Plaintiffs mortgage and loans by the Defendants, Plaintiff Donna Beck has been unable to pursue longstanding plans to expand her business.

123.    The frustration, consternation and anxiety experienced by the Plaintiffs as a result of the Defendants negligent actions relating to the servicing of their loans and the persistent threat of losing their home have caused them to suffer bouts of sleeplessness,

prolonged periods of depression, disruption and conflict in their interpersonal relations, a loss

of motivation and chronic feelings of helplessness and severe emotional and physical distress.

124.     Plaintiff David Sullivan has suffered from Type I diabetes for over forty years,

and the stress caused by the Defendants' wrongful conduct has made it more difficult for Mr.

Sullivan to manage this illness. He has also sought relief from the persistent stress and anxiety

caused by the Defendants conduct in increased consumption of alcohol.

125.     The Plaintiffs also reside in a small, tight-knit community, and they are active in

local civic and professional groups and organizations. The publication of foreclosure notices

has caused them deep humiliation and embarrassment, and adversely impacted their

professional standing and reputation in the community and caused them to curtail their civic

involvement.

126.     The financial uncertainty and resulting psychological impact on the Plaintiffs has

also caused their children to suffer corresponding emotional harm which has required medical

treatment and intervention.

127.     The full extent of the Plaintiffs' damages are not ascertainable at this time.

NINTH CAUSE OF ACTION:
INTENTIONAL OR NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS

128.     The Plaintiffs repeat the allegations set forth in paragraphs 1 through 127 above

and incorporate those allegations here by reference.

129.     The facts set forth above reflect that the Defendants either intended to inflict

emotional distress on the Plaintiffs or knew or should have known that emotional distress was

the likely result of their conduct.

130.    The facts set forth above reflect that the Defendants' conduct was extreme and outrageous under the circumstances.

131.    The Defendants by their acts and omissions as set forth above caused the Plaintiffs severe emotional distress, upset and anxiety.

132.    The frustration, consternation and anxiety experienced by the Plaintiffs as a result of the Defendants negligent actions relating to the servicing of their loans and the persistent threat of losing their home have caused them to suffer bouts of sleeplessness, prolonged periods of depression, disruption and conflict in their interpersonal relations, a loss of motivation and chronic feelings of helplessness and severe emotional and physical distress.

133.    Plaintiff David Sullivan has suffered from Type I diabetes for over forty years, and the stress caused by the Defendants' wrongful conduct has made it more difficult for Mr. Sullivan to manage this illness. He has also sought relief from the persistent stress and anxiety caused by the Defendants conduct in increased consumption of alcohol.

134.    The Plaintiffs also reside in a small, tight-knit community, and they are active in local civic and professional groups and organizations. The publication of foreclosure notices has caused them deep humiliation and embarrassment, and adversely impacted their professional standing and reputation in the community and caused them to curtail their civic involvement.

135.    The financial uncertainty and resulting psychological impact on the Plaintiffs has also caused their children to suffer corresponding emotional harm which has required medical treatment and intervention.

WHEREFORE, the Plaintiffs respectfully request that the Court grant them the following relief:

1.      On each of the above CAUSES OF ACTION, enter a Temporary Restraining Order prohibiting the Defendants, and any of their agents, servants, employees, attorneys, independent contractors, auctioneers, or any person acting on their behalf from conducting a mortgage foreclosure auction seeking to terminate the plaintiffs' right, title, and interest in their property known and identified as 92 Lakeshore Drive, Monson, Hampden County, Massachusetts;

2.      On each of the above CAUSES OF ACTION, enter preliminary and permanent injunctions prohibiting the Defendants and any of their agents, servants, employees, attorneys, independent contractors, auctioneers, or any person acting on their behalf, from scheduling a mortgage foreclosure sale of the Property at any time in the future until the claims in this matter are resolved or upon further order of the court;

3.      Waive the requirement of Mass.R.Civ.P. 65(c) that the Plaintiffs provide security for the issuance of the above Orders insofar as the Plaintiffs cannot afford to provide such security.

4.      On the FIRST CAUSE OF ACTION: BREACH OF CONTRACT, award the Plaintiffs specific performance of the Defendants contractual obligations in the form of the injunctive relief specified above, together with and award of damages;

5.      On the SECOND CAUSE OF ACTION: VIOLATION OF M.G.L. c. 244, §21, award the Plaintiffs the injunctive relief specified above;

6.      On the THIRD CAUSE OF ACTION: VIOLATION OF M.G.L. c.244, §35A, award the Plaintiffs the injunctive relief specified above;

7.      On the FOURTH CAUSE OF ACTION: VIOLATION OF M.G.L. c.244, §35B, award the Plaintiffs the injunctive relief specified above;

8.      On the FIFTH CAUSE OF ACTION: WRONGFUL FORECLOSURE, award the Plaintiffs the injunctive relief specified above;

9.      On the SIXTH CAUSE OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, award the plaintiff damages, together with the injunctive relief specified above;

10.     On the SEVENTH CAUSE OF ACTION: UNFAIR AND DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF G.L. c. 93A, for each separately protected legal interest invaded by the plaintiff in violation of M.G.L. c. 93A, and regulations promulgated thereunder, award the Plaintiffs the greater of $25 or treble, but not less than double, their actual damages, together with attorney's fees and costs, and the injunctive relief specified above.;

11.     On the EIGHTH CAUSE OF ACTION: NEGLIGENCE, award the Plaintiffs damages, together with the injunctive relief specified above;

12.     On the NINTH CAUSE OF ACTION: INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS, award the Plaintiffs damages, together with the injunctive relief specified above;

13.     Award the Plaintiffs punitive damages on any claim where such damages are appropriate and available.

14.     Order such further relief as the Court deems just and proper.

THE PLAINTIFFS
By their attorney,


_____/s/ Hugh D. Heisler_____
Hugh D. Heisler
BBO # 563925
Heisler, Feldman, McCormick &

Garrow P.C.
293 Bridge Street, Suite 322
Springfield, MA  01103
Ph:  (413) 788-7988
Fax:  (413) 788-7988
hheisler@hfmgpc.com

## VERIFICATIONS

I, David B. Sullivan, having read the above Complaint, verify that I have personal knowledge of the facts stated above and hereby swear under pains and penalties of perjury that all of those facts are true and accurate to the best of my information and belief.

Dated:   December 2, 2014

_____/s/ David B. Sullivan_____
David B. Sullivan

I, Donna L. Beck, having read the above Complaint, verify that I have personal knowledge of the facts stated above and hereby swear under pains and penalties of perjury that all of those facts are true and accurate to the best of my information and belief.

Dated:   December 2, 2014

_____/s/ Donna L. Beck_____
Donna L. Beck

## DEMAND FOR JURY

Plaintiffs David B. Sullivan and Donna L. Beck demand a trial by jury on all triable issues.

THE PLAINTIFFS
By their attorney,

_____/s/ Hugh D. Heisler_____
Hugh D. Heisler
BBO # 563925
Heisler, Feldman, McCormick &
        Garrow P.C.
293 Bridge Street, Suite 322
Springfield, MA  01103
Ph:  (413) 788-7988
Fax:  (413) 788-7988
hheisler@hfmgpc.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) or sent by first-class mail to any persons indicated as non-registered participants on this December 2, 2014.

_____/s/ Hugh D. Heisler_____
Hugh D. Heisler